IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PAMELA KING, *et al.* | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:04-cv-1055-MEF |
| | ) | |
| KIRKLAND'S STORES INC., | ) | (WO - Recommended for Publication) |
| | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OPINION AND ORDER

In this lawsuit, Pamela King, Tammy Elmore, Charlesalyn Smith, Alicia Caldwell, and

Angela Vinson allege that their former employer Kirkland's Stores, Inc. ("Defendant")

discriminated and retaliated against them with respect to their employment.  Pursuant to 42

U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981,[1] they seek redress.  This cause is

presently before the court on the following motions: Defendant's Motion for Summary

Judgment as to Plaintiff Alicia Caldwell's Claims (Doc. # 28); Defendant's Motion for

Summary Judgment as to Plaintiff Tammy Elmore's Claims (Doc. # 29), Defendant's Motion

for Summary Judgment as to Plaintiff Pamela King's Claims (Doc. # 30); Defendant's

Motion for Summary Judgment as to Plaintiff Charlesalyn Smith's Claims (Doc. # 31); and

Defendant's Motion for Summary Judgment as to Plaintiff Angela Vinson's Claims (Doc.

---

[1]  The Complaint initially included claims pursuant to 42 U.S.C. § 1983 (Count III) and the Americans with Disabilities Act (Count IV).  On February 9, 2005, this court dismissed the claims pursuant to § 1983.  (Doc. # 13).  On September 28, 2005, this court dismissed the claims pursuant to the Americans with Disabilities Act.  (Doc. # 65).

# 32).  Defendant filed its motions for summary judgment, along with supporting evidence and briefs on August 22, 2005.  Plaintiffs submitted a consolidated response to the motions (Doc. # 49).  Defendant submitted a reply brief and supplemental evidence.  The court has carefully considered all submissions in support of and in opposition to these motions and finds that the motions for summary judgment are due to be GRANTED.

## I. JURISDICTION AND VENUE

Jurisdiction over this matter is properly asserted pursuant to 28 U.S.C. §1331.  The parties do not contest personal jurisdiction or venue and the court finds adequate allegations of both.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, a party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Eberhardt v. Waters,* 901 F.2d 1578, 1580 (11th Cir. 1990).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.  After the nonmoving party has responded to the motion for summary judgment, the court must grant

summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

### III.  PROCEDURAL HISTORY

Plaintiffs filed a Complaint (Doc. # 1) on November 1, 2004.  In Count I, Plaintiffs alleged discrimination against them on the basis of their race (African-American) and sex (female).  Count I purported to be brought pursuant to both 42 U.S.C. § 2000e and 42 U.S.C. § 1981.  Count I specified two discriminatory actions: denial of promotion and termination of employment.  Count II alleged that Plaintiffs engaged in protected activity by complaining of race and sex discrimination by the Defendant and that Defendant retaliated against them by denying them promotions and terminating their employment.  Count III set forth a claim pursuant to 42 U.S.C. § 1983 for alleged violations of the First Amendment of the United States Constitution.  Count IV presented a claim on behalf of Caldwell pursuant to the Americans with Disabilities Act.  Plaintiffs sought declaratory and injunctive relief, compensatory and punitive damages, attorneys' fees, costs and expenses.

Defendant moved to dismiss Count III of the Complaint.  After careful consideration of submissions from the parties, the court granted that motion and dismissed Count III of the Complaint.  (Doc. # 13).  More recently, the parties jointly stipulated that Caldwell's claims under the Americans with Disabilities Act were to be dismissed without prejudice (Doc. # 64) and those claims, which had been set forth in Count IV of the Complaint were dismissed (Doc. # 65).

4

In light of the foregoing, the sole remaining claims before the court are for alleged discrimination and retaliation.  In August of 2005, Defendant filed five motions for summary judgment.  (Doc. # 28, 29 30, 31, & 32).  Each of the motions was directed to the claims of a particular plaintiff and sought judgment in Defendant's favor on all remaining claims. Each motion was supported by a brief (Doc. # 33, 34, 35, 36, & 37) and evidentiary submissions (Doc. # 40, 41, 42, 43, & 44).  Plaintiffs filed a single consolidated brief in response to Defendant's motions and attached numerous exhibits to that brief.  (Doc. # 49). As discussed specifically in later portions of this Memorandum Opinion and Order, Plaintiffs disavowed some of their claims in this response.  Defendant filed five reply briefs (Doc. # 52, 53, 54, 55, & 56).  Defendant also filed a corrective evidentiary submission.  (Doc. # 57).[2]

## IV.  FACTS

The court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to Plaintiffs, the non-moving parties, establish the following material facts:

---

[2]  After receiving Plaintiffs' response to the summary judgment motions, Defendant filed Defendant's Motion to Strike Portions of Plaintiffs' Deposition Testimony in Support of Plaintiffs' Response to Defendant's Motion for Summary Judgment.  (Doc. # 59). Plaintiffs opposed this motion.  (Doc. # 61).  Defendant submitted a reply.  (Doc. # 63).  This motion has been addressed by a separate Memorandum Opinion and Order.

## A.  The Parties

### 1. Defendant

Defendant is a leading specialty retailer of home decor products in the United States. During the time period relevant to this suit, Defendant operated two or three stores in Montgomery, Alabama, including a location at an outdoor shopping center known as the Shoppes at Eastchase ("the Eastchase store").[3]  Defendant also operated a store in nearby Prattville, Alabama.  Jeff Owens ("Owens") served at District Manager for all of these stores.

In September of 2003, Chris Gatewood ("Gatewood") became the Store Manager at the Eastchase store.  Gatewood had previously managed the Prattville store.  In March 2004, she advised Owens that she would be resigning in July 1, 2004 because she was getting married.  Owens recommended that Rob Baughman ("Baughman"), who had worked for Defendant in a variety of capacities since 1998, be promoted to Store Manager at Eastchase. Ultimately, Gatewood resigned earlier than she indicated and Owens had to cover a brief gap by asking others to assist with managerial duties or doing them himself.  On May 17, 2004, Baughman, a Caucasian male, replaced Gatewood as Store Manager at the Eastchase store.

---

[3]  One of Defendant's locations in Montgomery was located in Montgomery Mall. According to King, most of the customers at the Montgomery Mall store were African-American and most of the employees working in the Montgomery Mall store were also African-American.  In December of 2003, Defendant closed the Montgomery Mall location. After this closure, Defendant had two remaining stores in Montgomery: one at Eastdale Mall and the other at the Shoppes at Eastchase.  Some of the African-American employees who held management positions at the Montgomery Mall store were transferred to the Eastchase store.

### 2. Plaintiffs

#### a. Pamela King

Plaintiff Pamela King ("King") is an African-American female.  In September of 2002, King applied for a position as an Assistant Manager or Manager with Defendant.  The Store Manager of the Eastchase store, Christie Robbins ("Robbins") and Owens interviewed King.  Defendant offered King a position as a Senior Specialist[4] at the Eastchase store and King accepted.  Approximately two months after Defendant hired King, Owens promoted her to a position as Assistant Manager or Senior Assistant Manager.  She held that position until May 26, 2004, when Defendant terminated her employment.

She filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 17, 2004.  The EEOC mailed a copy of the Charge of Discrimination to Defendant on June 22, 2004.

In mid-July of 2004, Defendant transferred Kevin Willis ("Willis"), an African-American male from the Eastdale Mall store to the Eastchase store.  Willis filled the Senior Assistant Manager position at Eastchase that King had held prior to the termination of her employment.

#### b. Tammy Elmore

Plaintiff Tammy Elmore ("Elmore") is an African-American female.  In January of

---

[4]  A Senior Specialist is a semi-management position and has responsibilities for opening or closing the store, register procedures, and the end of the night paperwork.

2002, Elmore applied for a position as a Sales Associate at Defendant's Montgomery Mall store. On March 22, 2002, Elmore began her employment with Defendant as a Cashier. In September of 2003, Owens approved the promotion of Elmore from Sales Associate to Keyholder.[5] This promotion was accompanied by an increase in her pay. When the Montgomery Mall store closed in late 2003, Elmore transferred to the Eastchase store. On May 26, 2004, Defendant terminated Elmore's employment. Following the termination of Elmore's employment, the Store Manager at the Eastchase store promoted Jessica Senft Bentley ("Bentley"), a Caucasian female, from Sales Associate to Keyholder. On June 23, 2004, Elmore filed a Charge of Discrimination with the EEOC alleging race and sex discrimination.

### c. Charlesalyn Smith

Plaintiff Charlesalyn Smith ("Smith") is an African-American female. She began her employment with Defendant in 2001. Initially, she was employed at the Montgomery Mall store. When the Montgomery Mall store closed at the end of December of 2003, Smith was pregnant and close to her due date. Owens told her that after she returned from maternity leave she could work at the Eastchase store. On February 23, 2004, Smith applied for a position as a Sales Associate at the Eastchase store. She was hired and began her employment there on February 25, 2004. On May 27, 2004, Defendant terminated Smith's employment. On May 29, 2004, Defendant hired Laurie Brewer ("Brewer"), a Caucasian

---

[5] As a Keyholder, Elmore opened and closed the store and ran the cash register.

female, as a Sales Associate.[6]

### d.  Alicia Caldwell

Plaintiff Alicia Caldwell ("Caldwell") is an African-American female.   Caldwell applied for a position with Defendant in January of 2002.  On January 28, 2002, she began her employment with Defendant as a Sales Associate in the Eastdale store.  Within a few months, she transferred to the Montgomery Mall store.   On April 8, 2002, Defendant promoted Caldwell to Hourly Assistant Manager.   Sometime prior to August of 2003, Caldwell transferred to the position of Stockroom Supervisor.   At the end of 2003, the Montgomery Mall store closed and Caldwell transferred to the Eastchase store, where she also served as Stockroom Supervisor.   On April 29, 2004, Caldwell was injured while performing her duties.  She returned to work with order from her doctor which limited her duties to certain duties on the showroom floor.   On May 26, 2004, Defendant terminated Caldwell's employment.  In June of 2004, the Store Manager at the Eastchase store hired

---

[6]  After the termination of the employment of the Plaintiffs and other employees at the Eastchase store, Baughman, the Caucasian male who had been hired to replace Chris Gatewood as Store Manager after Gatewood resigned, hired several new employees for the Eastchase store.  From May of 2004 through July of 2004, he hired the following employees to serve as Sales Associates at the Eastchase store: Ballard Reynolds (Caucasian), Amir Ennis (Caucasian), Laurie Brewer (Caucasian), Megan Belcher (Caucasian), Dana Jennings (African-American), Shalanda Brook (African-American), John Anderson (Caucasian), Jessica Stinson (African-American), and Stephanie Thrasher (Caucasian).  The court does not have any information before it about the racial make-up of the pool of qualified applicants from which these people were selected.  According to the records provided to this court, none of these employees worked for Defendant for more than a year and some appear to have worked there only a few weeks or a few months.

Terry Ware ("Ware"), an African-American male, to be the Stockroom Supervisor at the Eastchase store.

### e. Angela Vinson

Plaintiff Angela Vinson ("Vinson") is an African-American female.   On September 26, 2002, Vinson began her employment with Defendant as a Sales Associate at the Eastdale store.  Eventually, Vinson transferred to a position as a Sales Associate at the Eastchase store.  In May of 2004, she was working part-time as a Sales Associate.  On May 26, 2004, Defendant terminated Vinson's employment.  Vinson claims to have been replaced by Amir Ennis ("Ennis"), a Caucasian female hired as a Sales Associate on May 28, 2004.

## B.  Relevant Policies and Procedures

### 1.  Policies Against Discrimination

Defendant has a clear written policy of providing equal opportunities in employment to all employees and applicants.  Its policy provides that no person is to be discriminated against on the basis of their race, color, religion, sex, national origin, or disability.  The written anti-discrimination policies are included in Defendant's Associate Handbooks.

### 2.  Policies Relating to Store Manager

Defendant's Associate Handbook exhorts employees who have questions or concerns relating to their jobs or to "some aspect of Kirkland's policies or procedures" to ask the Store Manager for assistance.

### 3.  Policies Relating to Employee Purchases

On May 15, 2003, Defendant distributed to its employees a Revised Associate Purchase Policy.  The policy provides that

> The Store Manager will be the only associate that may ring an associate purchase which contains any item(s), which are being sold for a price different than the current selling price (ex. AS-IS, DEPT 4), for all associates ASSIGNED (associate hired or transferred in) to that store.

In August of 2003, a revised version of the Associate Handbook was distributed to employees.  This Associate Handbook sets for the applicable discounts for employee purchases: hourly Associates - 20%; Associates with ten or more years of continuous service - 30%; current Assistant Managers and Operations Managers - 30%; probationary Assistant Managers and Operations Managers - 20%; current Store Managers, General Managers, and above - 40%.  The Associate Handbook makes clear that discount is solely for the benefit of the employee, and merchandise purchased with an employee discount may not be resold.

It is also very clear from the Associate Handbook that all employee transactions must be rung up either by the Store Manager, Assistant Manager or Supervisor on duty.  Additionally,

> Any Associate purchase which contains merchandise being sold below the current selling price (i.e. AS-IS, Dept 4), will only be rung by the Store Manager.
>
> Kirkland's "Hold Policy" for both Associates and customers is that merchandise may be held off the salesfloor pending purchase for no more than 48 hours.  All "Holds" must be kept in a designated area in the stockroom and have a completed Hold Request Form attached to the merchandise.

The Associate Handbook also provides that "[n]o merchandise is to be sold for more or less than the marked retail price except for valid and supervised Associate discount transactions."

## C.  Plaintiffs' Knowledge of Defendant's Policies and Procedures

All of Plaintiffs admit receiving a copy of the Associate Handbook and having an opportunity to review the Operations Manual during their employment.  Additionally, it is not disputed that Plaintiffs had training, instruction, and testing on a variety of company policies prior to the termination of their employment.  Plaintiffs admit that they each received a copy of the Revised Associate Purchase Policy in May of 2003 and the August 2003 revisions to the Associate Handbook.

## D.  Conduct for Which Defendant Contends It Terminated Plaintiffs' Employment

In March of 2004, Owens and others attended Defendant's annual profit review session in Jackson, Tennessee.  At the meeting, Owens reviewed the profit reports for the Eastchase store.  The Eastchase store had an unusually low profit margin.  In fact, its profit margin was well below the national average for Defendant's stores.  As a result of obtaining this information, Owens asked Lynae McClure ("McClure"), an employee in Defendant's Loss Prevention Department, to review the sales activity at the Eastchase store for any irregularities.  Owens specifically asked her to review the associate purchases.  At this same time, Bill McParland ("McParland")[7] asked McClure to go back and generate a report on

---

[7]  McParland has been the Director of Loss Prevention for Defendant since April of 2002.

12

price overrides that had been happening in that store for approximately the last sixty or ninety days. After reviewing the information, the Loss Prevention Department confirmed unusually high discounts for employee purchases at the Eastchase store. McParland indicated to Owens that there were a large number of associate purchases where there were excessive discounts. McParland asked Owens to go to the Eastchase store and actually pull the paper copies relating to the transactions that were kept in the personnel files and review them for issues of concern.

During the first week of May of 2004, Owens went to the Eastchase store to further investigate the matter. While there, he reviewed the receipts of employee purchases kept in the employee files.[8] Owens observed that several of the sales associates and managers at the Eastchase store had made repeated purchases of high dollar items that were marked "AS IS"[9] or "Department 4"[10] for excessively discounted rates. Additionally, even though the Kirkland's Associate Purchase Policy provides that only the Store Manager may approve and ring up the purchase of an "AS IS" item by an employee, Owens discovered several

---

[8]  Pursuant to Defendant's policies and procedures, the receipts from employee purchases are maintained in the employee's personnel file.

[9]  "AS IS" merchandise is merchandise that is damaged from shipping or is damaged while in the store.

[10]  "Department 4" merchandise is the non-damaged items from a damaged set of merchandise. Specifically, when merchandise is sold in a set, such as a pair of candlestick holders, and only some of the items in the set are damaged, the non-damaged items in the set are sold as "Department 4" merchandise, whereas the damaged items in the set would be sold as "AS IS" merchandise.

purchases of "AS IS" items by employees at the Eastchase store which had not been approved and rung up by the Store Manager.  Lower-level managers signed the receipts "approving" the purchases.  Owens did not review each and every receipt from an associate purchase during his visit to the store because there were so many of them.

On May 6, 2004, after Owens and the Loss Prevention Department had begun their investigation of employee purchases at the Eastchase store, Chris Gatewood ("Gatewood") and Sheila Stovall ("Stovall") resigned their positions.[11]

On May 20, 2004, McParland interviewed King, Elmore and Smith.  During the interviews, King, Elmore, and Smith each confirmed that they had purchased items at large discounts, but insisted that Gatewood had approved of the transactions.  They also confirmed that the Store Manager did not always ring up the purchases of "AS IS" items as required by Defendant's written policies, but claimed that Gatewood had allowed employees other than herself to ring up the "AS IS" transactions.  During the interview, King told McParland that employees at the Prattville stores made similar purchases.  After the interview, McParland had McClure take a cursory look at the report for the Prattville store to see if there was anything similar to what was taking place at Eastchase and there was not.

Owens interviewed Caldwell, Vinson, and two other employees– Crystal Samuels

---

[11]   Gatewood, a Caucasian female, was the Store Manager.  Shelia  Stovall, an African-American female, had been a Store Manager at the Montgomery Mall store, but after it closed she transferred to the Eastchase store where she was serving as one of two Assistant Managers.  Neither Gatewood, nor Stovall is a party to this action.

("Samuels")[12] and Katrina Hayden ("Hayden")[13] concerning their employee purchases.  Some of the employees interviewed provided written statements.

After of the interviews were completed, McParland presented his findings to Jim Harris ("Harris"), Defendant's Vice-President.  Harris instructed Owens to terminate the employment of each employee involved in the abuse of the associate purchase policy.  Owens terminated the employment of King, Elmore, Smith, Samuels, Caldwell, and Carolyn Cox.[14] Hayden, another Sales Associate at the Eastchase store, was not fired because she was not found to have engaged in the violations of Defendant's policies.  As previously noted, Hayden is African-American.

### E. Other Evidence Which Plaintiffs Contend is Relevant to the Issues Before the Court

In April of 2004, Defendant received a customer complaint that the Eastchase store had too many African-American employees and that the store was turning into another Montgomery Mall.  Plaintiffs argue that as a result of the investigation of employee purchases at the Eastchase store, the racial make-up of the employees changed.

## V.  DISCUSSION

### A.  Retaliation

Defendant has moved for summary judgment on Plaintiffs' claims that they were

---

[12]  Samuels, a Caucasian female, was a Sales Associate at the Eastchase store.

[13]  Hayden, an African-American female, was a Sales Associate at the Eastchase store.

[14]  Carolyn Cox, an African-American female, was a Sales Associate at the Eastchase store.  She is not a plaintiff in this action.

retaliated against in violation of Title VII for complaining of race and sex discrimination. In response, Plaintiffs first state that Elmore, Vinson, Smith, and Caldwell have not "alleged facts to bring a claim based on retaliation and do not bring such a claim." (Doc. # 49 at p.2 n.2 and p. 4). While the court is not convinced that the allegations of the Complaint make it in any way clear that Elmore, Vinson, Smith, and Caldwell do not allege retaliation, the court is willing to accept the representation of their counsel that they do not intend to pursue such claims. Moreover, the court will also accept the representation of counsel that King does not wish to pursue her claim for retaliation. Accordingly, all claims in Count II of the Complaint will be DISMISSED.

## B. Discrimination Claims Arising Out of the Failure to Promote

In Count I of the Complaint, Plaintiffs allege that they were denied promotions to positions for which they were qualified on the basis of their race and sex. Compl. at ¶ 60. Specifically, Plaintiffs allege that they were denied the opportunity to be promoted to store manager at Eastchase after Gatewood resigned. Compl. at ¶¶ 13-15, 19, 27-28, 37-38, 49, & 56. Defendant has sought summary judgment on these claims.

Title VII makes it an "unlawful employment practice" for an employer to fail or refuse to promote any individual because of her race or sex. *See, e.g.,* 42 U.S.C. § 2000e-2(a); *Sledge v. Goodyear Dunlop Tires N. Am. Ltd,* 275 F.3d 1014, 1018 (11th Cir. 2001) (race); *Cofield v. Goldkist, Inc.,* 267 F.3d 1264, 1267-68 (11th Cir. 2001) (sex); *Lee v. GTE Fla., Inc.,* 226 F.3d 1249, 1253 (11th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001) (sex); *Norrell*

*v. Waste Away Group, Inc.,* 246 F. Supp. 2d 1213, 1220-21 (M.D. Ala. 2003) (sex); *Gaddis*

*v. Russell Corp.,* 242 F. Supp. 2d 1123, 1134-35 (M.D. Ala.)*, aff'd without opinion,* 88 Fed.

App. 385 (11th Cir. 2003) (race).  Similarly, Section 1981 provides a remedy to those who

can show that they were discriminated against on the basis of their *race* by their employer

with respect to a promotional decision.  *See, e.g., Sledge,* 275 F.3d at 1018; *Gaddis,* 242 F.

Supp. 2d at 1134-35.  Unlike Title VII, Section 1981 does not provide a remedy for sex

discrimination.  Both Title VII and Section 1981 have the same requirements of proof and

use the same analytical framework.  *See, e.g., Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d

1318, 1330 (11th Cir. 1998), *reh'g en banc denied,* 172 F.3d 884 (11th Cir. 1999).

Plaintiffs proffer no direct or statistical evidence in support of their claims arising out

of Defendant's failure to promote them to Store Manager after Gatewood resigned.

Accordingly, their discrimination claims are properly analyzed using the burden shifting

paradigm developed in *McDonnell Douglas v. Green* and its progeny.  *See, e.g., McDonnell*

*Douglas v. Green,* 411 U.S. 792 (1973).  This same approach applies to race and sex

discrimination claims pursuant to Title VII, as well as to race discrimination claims pursuant

to Section 1981.  Under this approach, the plaintiff has the burden of establishing a *prima*

*facie* case of unlawful discrimination by a preponderance of the evidence.  *Id.* at 802.  This

*prima facie* case requires "evidence adequate to create an inference that an employment

decision was based on a[n] illegal discriminatory criterion." *International Bhd. of Teamsters*

*v. United States,* 431 U.S. 324, 358 (1977).  The plaintiff's establishment of a  *prima facie*

case raises a presumption of illegal discrimination.  *See, e.g., Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981); *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to rebut the presumption by articulating a legitimate, nondiscriminatory reason for its employment action.  *Holifield v. Reno,* 115 F.3d 1555, 1564-65 (11th Cir. 1997).  "This intermediate burden is 'exceedingly light.'" *Id.*  (quoting *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir. 1994).  The defendant has only a burden of production, not a burden of persuasion, and does not have to persuade a court that it was actually motivated by the reason advanced.  *McDonnell Douglas,* 411 U.S. at 802; *Burdine,* 450 U.S. 253-55.

Once the defendant satisfies this burden of production,

> the presumption of discrimination is eliminated and the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.

*Chapman,* 229 F.3d at 1024 (internal citations and quotations omitted).  The establishment of the *prima facie* case does not, in itself, entitle the plaintiff to defeat a defendant's motion for summary judgment.  After the defendant proffers a legitimate reason for its actions, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman,* 229 F.3d at 1037.

18

To establish a *prima facie* case in a failure to promote claim, a plaintiff must prove the following four elements:

> 1) that she belongs to a protected class; 2) that she was qualified for a job for which the employer was seeking applicants; 3) that despite her qualifications, she was rejected; and 4) that, after her rejection, the employer continued to seek applicants or filled the position with a person outside of plaintiff's protected class.

*Gaddis,* 242 F. Supp. 2d at 1135 (M.D. Ala. 2003).  *Accord, Walker v. Mortham,* 158 F.3d 1177, 1186 (11th Cir. 1998), *cert. denied,* 528 U.S. 809 (1999).  The court will assume *arguendo* that Plaintiffs have established a *prima facie* case of discrimination on the basis of race and sex.  While it is clear from the record before this court that Defendant replaced Gatewood with Baughman, a Caucasian male, without first considering applications from Plaintiffs or others working at the Eastchase store, Defendant has proffered a legitimate non-discriminatory reason for this action, namely, the superior qualifications of the person selected.  It is undisputed that all of the Plaintiffs began their employment with Defendant in either 2001 or 2002, but Baughman began working for Defendant in 1998 and had worked for Defendant in a variety of capacities at several locations thereby gaining superior experience to that of any of the Plaintiffs.  Plaintiffs have offered no evidence which calls the proffered legitimate non-discriminatory reason into question.  Indeed, one Plaintiff, King, has specifically abandoned her claims relating to the promotion of Baughman.  *See* Doc. # 49 at p.4.  In light of the foregoing, Defendant's motion for summary judgment is due to be GRANTED and Defendant is entitled to judgment as a matter of law on all of Plaintiffs' that

Defendant discriminated against them by failing to promote them as set forth in Count I of the Complaint.

**C. Discrimination Claims Arising Out of the Termination of Plaintiffs' Employment**

In addition to providing protection to employees from discrimination with respect to promotional decisions, Title VII and Section 1981 also prohibit employers from discriminating against employees with respect to decisions relating to the termination of their employment. *See* 42 U.S.C. § 2000e-2(a)(1). "A Title VII disparate treatment plaintiff must prove that the defendant acted with discriminatory purpose." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir. 1984). A plaintiff may attempt to do so by offering either statistical,[15] direct, or circumstantial evidence. In this case, Plaintiffs argue that they have established a prima facie case of discriminatory termination by both direct evidence and circumstantial evidence.

**1. Direct Evidence**

Plaintiffs argue that their claims of race discrimination with respect to the termination

_____

[15] A plaintiff in an employment discrimination case may establish a prima facie case of discrimination under Title VII on the basis of statistical proof of a pattern of discrimination. *See, e.g., Wilson v. AAA Plumbing Pottery Corp.,* 34 F.3d 1024, 1027 (11th Cir. 1994). While Plaintiffs offer some information about the number of African-American employees before and after the termination of their employment, they do not provide statistical analyses or sufficient relevant information to make that evidence sufficient to form the basis for a case built on statistical evidence. Plaintiffs may recognize this as they present the evidence in conjunction with their arguments relating to what they contend establishes "direct evidence" of discrimination, rather than in a separate argument.

of their employment are supported by direct evidence.[16]   In the context of employment discrimination cases, it is well-settled that direct evidence is evidence which, if believed, proves the existence of a fact in issue, such as the existence of a discriminatory motive, without inference or presumption; if the evidence merely suggests that the employer acted with a discriminatory motive then it is circumstantial evidence, not direct evidence.  *See, e.g.,* *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1086-87 (11th Cir. 2004); *Standard v. A.B.E.L. Servs.,* Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); *Burrell v. Board of Trs. of Ga. Military Coll.,* 125 F.3d 1390, 1393 (11th Cir. 1997); *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir. 1989); *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th Cir. 1987); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 n.6 (11th Cir.1987).  Direct evidence of discrimination is evidence which reflects a discriminatory attitude correlating to the discrimination complained of by the employee.  *Wilson,* 376 F.3d at 1086.  "Therefore, remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."  *Standard,* 161 F.3d at 1330.  Moreover, direct evidence is composed of "only the most blatant remarks, whose intent could be nothing other than to discriminate" on the basis of some impermissible factor.  *Carter,* 870 F.2d at 582.

Having reviewed the evidentiary record as a whole, the court finds no evidence which,

---

[16]  Plaintiffs make no argument that any direct evidence supports the claims of King and Caldwell that they were discriminated against on the basis of their sex when Defendant terminated their employment.  Those claims will be analyzed in a different part of this Memorandum Opinion and Order as claims brought solely on the basis of circumstantial evidence.

if believed, proves the existence of discrimination without inference or presumption.  Put another way, Plaintiffs have pointed to nothing that constitutes direct, rather than circumstantial evidence that they were terminated because of their race.  Plaintiffs argue that the fact that Defendant received a complaint from a customer that there were too many African-American employees at the store and that the store was turning into another Montgomery Mall constitutes direct evidence when combined with the fact that in the following months the racial make-up of the employees at the Eastchase store changed, due in large part to the termination of Plaintiffs' employment in May of 2004.  This evidence is not the type of evidence which the Eleventh Circuit Court of Appeals has accepted as direct evidence of improper motive in past cases.[17]  The negative comments about the racial composition of the Eastchase staff came from a customer not from anyone in the management of Defendant.  The comments were separated in time from the decision to terminate Plaintiffs' employment.  This evidence does not establish discriminatory intent without inference or presumption.

## 2. Circumstantial Evidence

### a. Overview of the Legal Paradigm

In evaluating disparate treatment claims supported by circumstantial evidence, courts

---

[17]  "One example of direct evidence would be a management memorandum saying, 'Fire [Plaintiff]--[she] is [African-American].'"  *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990).

within this Circuit and elsewhere rely on the framework established by the United States

Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dep't*

*of Community Affairs v. Burdine,* 450 U.S. 248 (1981).  *See, e.g., Wilson v. B/E Aerospace,*

*Inc.,* 376 F.3d at 1087.

> Under this framework, the plaintiff first has the burden of
> establishing a prima facie case of discrimination, which creates
> a rebuttable presumption that the employer acted illegally.  A
> plaintiff establishes a prima facie case of disparate treatment by
> showing that she was a qualified member of a protected class
> and was subjected to an adverse employment action in contrast
> with similarly situated employees outside the protected class.
> The methods of presenting a prima facie case are not fixed; they
> are flexible and depend to a large degree upon the employment
> situation.

*Id.* (internal citations omitted).  Once a plaintiff establishes a prima facie case, the employer

must articulate a legitimate, non-discriminatory reason for its actions.  *Id.*  The employer has

a burden of production, not a burden of persuasion, and it need not persuade the court that

it was actually motivated by the proffered reasons.  *Id.*

If an employer satisfies its burden by articulating a non-discriminatory reason, it

rebuts the presumption of discrimination created by the prima facie case.  *Id.*  The burden of

production then shifts to the plaintiff to offer evidence that the alleged reason of the

employer is a pretext for illegal discrimination.  *Id.*  The plaintiff may satisfy this burden of

showing pretext by persuading the court either directly that a discriminatory reason more than

likely motivated the employer or indirectly that the proffered reason for the employment

decision is not worthy of belief.  *See, e.g., Burdine,* 450 U.S. at 256.  The plaintiff may

23

accomplish this in a number of ways.  Recognized ways of establishing pretext in cases involving the termination of an employee for alleged violation of a work rule include a showing by the plaintiff either that she did not violate the work rule or that, if she did, other employees not within the protected class who engaged in similar acts were not similarly treated.  *See, e.g., Anderson v. Savage Labs., Inc.,* 675 F.2d 1221, 1224 (11th Cir. 1982).

All Plaintiffs contend that Defendant terminated their employment because of their race.  Additionally, King and Caldwell contend that they were discharged from their employment with Defendant because of their sex.[18]  These claims may be analyzed together as the burden shifting approach for race claims and for sex claims is the same.

### b.  Prima Facie Case

In this case, Plaintiffs claim that the termination of their employment was discriminatory.

> A plaintiff's prima facie case for a discharge-discrimination claim must show the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position at issue; (3) the plaintiff was discharged despite his qualification; and (4) the plaintiff was subject to differential treatment, that is, he was either (a) replaced by someone who was not a member of the plaintiff's protected class or (b) a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged.

---

[18]  The Complaint clearly alleges sex discrimination claims on behalf of each of the Plaintiffs.  In their opposition to Defendant's motion for summary judgment, however, Elmore, Smith, and Vinson all affirmatively indicate that they have decided not to pursue claims based on sex discrimination.  *See* Doc. #49 at p. 4.

*Keel v. U.S. Dep't of Air Force*, 256 F. Supp. 2d 1269, 1285 (M.D. Ala. 2003), *aff'd without opinion*, 99 Fed. Appx. 880 (11th Cir. Mar 02, 2004); *Davis v. Qualico Miscellaneous Inc.,* 161 F. Supp. 2d 1314, 1319 (M.D. Ala. 2001). *Accord, Williams v. Motorola,* 303 F.3d 1284, 1293 (11th Cir. 2002). There is no dispute that Plaintiffs can each establish the first three elements of the prima facie case of discriminatory discharge with respect to each remaining claim. The disagreement between the parties arises over whether Plaintiffs can establish the fourth element of the prima facie case.

The court must consider whether Elmore, Smith, and Vinson have established a prima facie case of discriminatory discharge on the basis of their race. First, they each argue that they were replaced by Caucasians. Second, they contend that they have identified similarly situated Caucasian employees who engaged in conduct nearly identical to that for which they were discharge, but were not discharged. With respect to their contention that they were replaced by Caucasian employees, Defendant argues that is not the case by pointing out that after the termination of the employment of Elmore, Smith, and Vinson as sales associates at the Eastchase store, it hired six sales associates three of whom were African-American and three of whom were Caucasian. Defendant appears to contend that Plaintiffs cannot identify a particular sales associate as having replaced them. Viewing these facts in the light most favorable to Plaintiffs, the court must find that Elmore, Smith, and Vinson have each established a prima facie case of discriminatory discharge on the basis of their race by showing that each of them was replaced by a Caucasian.

Similarly, the court is satisfied that King and Caldwell have established a prima facie case of sex discrimination with respect to the termination of their employment because each of them was replaced by a man.  Of course, the men who replaced King and Caldwell are African-American.  Consequently, King and Caldwell seek to establish a prima facie case of discriminatory discharge with respect to race discrimination by offering evidence that a similarly situated employee who was not a member of their race engaged in conduct nearly identical to that for which they were discharged, but was not discharged.[19]  Alternatively, King and Caldwell argue that even absent evidence establishing a "classic" prima facie case formula, they can establish a prima facie case of disparate treatment by any proof of actions taken by the employer from which a reasonable jury could infer discriminatory animus.  For this proposition, they rely on *Schoenfeld v. Babbit,* 168 F.3d 1257, 1268 (11th Cir. 1999).

---

[19]  King also argues that the race of her replacement should not preclude her from establishing a prima facie case because her position remained open for a time and was not filled by her African-American replacement until after Defendant knew she had filed a Charge of Discrimination with the Equal Employment Opportunity Commission.  The court recognizes that the Eleventh Circuit Court of Appeals has considered arguments similar to King's meritorious.  *See, e.g., Howard v. Roadway Express,* 726 F.2d 1529, 1535 (11th Cir. 1984) (finding that position filled after a lapse of eleventh months and after EEOC Charge had been filed by plaintiff was sufficient to establish a prima facie case).  Nevertheless, the facts of this case are not the type from which a reasonable jury could find that Defendant's actions create the inference that a discriminatory animus motivated Defendant to terminate King's employment.  Defendant discharged King on May 26, 2004.  On June 23, 2004, King filed her Charge of Discrimination with the EEOC.  In July of 2004, Willis was transferred from another of Defendant's stores to the Eastchase store to serve as Senior Assistant Manager, the position King previously held.  Her position remained open for only a month and a half.  King simply fails to provide sufficient evidence from which a reasonable jury could find that the transfer of Willis was designed to disguise an act of discrimination.

The court will address these arguments in turn.

As previously stated one way that King and Caldwell seek to establish a prima facie case of discriminatory discharge on the basis of race is by showing the Defendant treated similarly situated employees outside of their protected class, for these purposes outside of their race, more favorably.  In evaluating this claim, the court must be mindful of the binding precedent from the Eleventh Circuit Court of Appeals which requires King and Caldwell to be similarly situated in all relevant respects to those comparators they identify.  *See, e.g., Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1082 (11th Cir. 2005) (doctor discharged from clinic due to patient complaints about his conduct who couldn't show that he was replaced by someone outside his protected class and who couldn't show that a comparable person outside his protected class received "nearly identical" complaints, but was not fired failed to establish a prima facie case); *Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1259 (11th Cir. 2001) (reversing judgment in favor of plaintiff because employer entitled to judgment as a matter of law where plaintiff's comparator engaged in fewer instances of misconduct than plaintiff); *Maniccia v. Brown,* 171 F.3d 1364, 1368-69 (11th Cir. 1999) (affirming summary judgment in employer's favor where alleged misconduct of comparators was not sufficiently similar to support disparate treatment claim); *Holifield v. Reno,* 115 F.3d 1555, 1563 (11th Cir. 1997) (affirming summary judgment where plaintiff failed to produce sufficient evidence that non-minority employees with which he compares his treatment were similarly situated in all aspects, or that their conduct was of comparable seriousness to the

27

conduct for which he was discharged); *Jones v. Gerwens,* 874 F.2d 1534, 1540-42 (11th Cir. 1989); *Nix,* 738 F.2d at 1185-87 (African-American plaintiff who was replaced by another African-American after termination for violation of work rule failed to make out a prima facie case of race discrimination because he did not meet his burden of showing that a white employee in similar circumstances was retained while he was fired).   In evaluating the similarity of the comparators identified by the plaintiff, the most important variables in a discriminatory discipline case are the nature of the offenses committed and the nature of the punishments imposed.  *See, Jones v. Gerwens,* 874 F.2d at 1539.  Both the "quantity and the quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples and oranges." *Maniccia,* 171 F.3d at 1368.  In making this analysis a court must keep in mind that "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules[.]" *Id.* at 1369.  Moreover, the actions of the employer toward the proffered comparators are only relevant if the decisionmaker knew of the rule violations by the comparators and took no action against them.  *Jones v. Gerwens,* 874 F.2d at 1542.

Defendant contends it terminated the employment of King and Caldwell for abuse of Defendant's discount policy and the associate purchase policy.  King and Caldwell argue that Defendant did not terminate the employment of Caucasian employees engaged in similar violations of these policies.  Specifically, they point to certain Caucasian employees of

Kirkland's store in Prattville.  It is undisputed that between July 31, 2003 and February 21, 2004, King failed to have her manager ring up twenty-eight purchases that the Defendant's written policies required a manager to ring up.  It is also undisputed that between January 5, 2004 and April  22, 2004, Caldwell failed to have her manager ring up forty-five purchases that the Defendant's written policies required a manager to ring up.  In comparison, the Caucasian employees King and Caldwell identify had far fewer purchases in violation of the store policy on having a manager ring up certain purchases: Lisa Wilson - four; Elizabeth Holmes - two; Kerry Cole - eleven; Erin Berger - seventeen; Baughman - one.

Moreover, King and Caldwell purchases reflect significantly more excessively discounted items than any comparator identified.  From January 1, 2004 through June 1, 2004, King purchased approximately eighty-two items at excessively discounted rates.[20]  During this same period, Caldwell purchased approximately two hundred and fifty-six items at excessively discounted rates.  Caldwell purchased multiple expensive items discounted by more than 90% in addition to her 30% employee discount.

---

[20]  A sampling of King's purchases illustrate the nature of the discounts she enjoyed:

| Date | Regular Price | King's Price |
|------|--------------|--------------|
| April 13, 2004 | $145.91 (four items) | $4.02 (four items) |
| April 12, 2004 | $42.89 (two items) | $1.22 (two items) |
| April 2, 2004 | $434.91 (five items) | $7.00 (five items) |
| January 9, 2004 | $736.46 (twenty-two items) | $0.63 (twenty-two items) |

Based on the extensive evidentiary record before the court, viewed in the light most favorable to Plaintiffs, no reasonable jury could find that Defendant failed to terminate the employment of Caucasian employees who engaged of misconduct of a nearly identical quantity and quality to the misconduct of King and Caldwell.  Defendant has a right to interpret its rules as it chooses and to make determinations as it sees fit under those rules.  It is not the role of this court to second-guess such determinations.  To find on this evidentiary record that King and Caldwell have established a prima facie case by their comparator evidence would be to confuse the proverbial apples and oranges.  Consistent with the previously cited binding precedent from the Eleventh Circuit Court of Appeals, the court finds that King and Caldwell have failed to establish a prima facie case by pointing to a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged.

Finally, King and Caldwell contend that they have satisfied the requirement of establishing a prima facie case by offering some evidence that would allow an inference of discrimination.  The Eleventh Circuit Court of Appeals has, in a few cases, allowed a plaintiff to satisfy the requirements of offering evidence sufficient to constitute a prima facie case of employment discrimination by other proof of actions taken by the employer from which a reasonable jury could infer discriminatory animus.  *See, e.g., Schoenfeld,* 168 F.3d 1268.  Taking the evidentiary record as a whole and viewing it in the light most favorable to King and Caldwell, the court finds that the evidence offered is insufficient to allow a

reasonable jury to infer that the termination of their employment was based on their race.

Accordingly, the court finds that Defendant is entitled to summary judgment on the claims

brought by King and Caldwell for *race* discrimination with respect to the termination of their

employment because they have failed to establish a prima facie case by any of the means

recognized by either the United States Supreme Court or the Eleventh Circuit Court of

Appeals.[21]

### c. Legitimate, Non-Discriminatory Reason for Termination Decisions

To the extent that Plaintiffs have established a prima facie case of discriminatory

discharge with respect to some of their claims.  The court must now examine whether the

employer has offered a legitimate, non-discriminatory reason for the termination of Plaintiffs'

employment.  Once a plaintiff alleging employment discrimination has established a prima

facie case, thereby raising an inference that she was the subject of intentional race

discrimination, the burden shifts to the defendant to rebut this inference by presenting

legitimate, non-discriminatory reasons for its employment action.  *See, e.g., Burdine,* 450

U.S. 248.  This burden is "exceedingly light."  *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057,

1061.

------

[21] In the alternative, the court finds, for reasons set forth in the following sections of this Memorandum Opinion and Order that Defendant is entitled to summary judgment on the claims by King and Caldwell that their employment was terminated because of their race because the court is satisfied that neither King nor Caldwell have shown that the legitimate, non-discriminatory reason Defendant has proffered for the termination of their employment was a pretext for intentional discrimination.

Defendant has met its burden in this case.  Defendant contends that after an investigation into the source of depressed store revenue, it terminated the employment of all employees of the Eastchase store, irrespective of their race, who had violated its written policies governing employee purchases.  The Eleventh Circuit Court of Appeals has made it plain that an employee's violation of company policies or procedures constitutes a legitimate, non-discriminatory reason for an adverse employment action.  *See, e.g., Bogle v. Orange County Bd. of Com'rs,* 162 F.3d 653, 657 (11th Cir. 1998).

### d. Pretext

Where, as here, the defendant meets its burden of articulating a legitimate, non-discriminatory reason for its actions, a plaintiff alleging employment discrimination has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination.  *See, e.g., McDonnell Douglas,* 411 U.S. 792.  There are a variety of ways for a plaintiff to establish pretext, or in opposition to a motion for summary judgment to establish that a jury question exists as to whether the employer's proffered reason was a pretext for discrimination.  Nevertheless, in considering a plaintiff's evidence of pretext, this court is mindful that "[t]he inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions[.]" *Holifield,* 115 F.3d at 1565.  Indeed, if an employer honestly believes that the employee has violated company policy, the truth or accuracy of the report is irrelevant.  *See Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1363 n.3 (11th Cir. 1999).

32

There are a variety of ways for a plaintiff claiming employment discrimination to establish that the employer's legitimate, non-discriminatory reason is pretextual.  For example, a plaintiff can show that she did not engage in the conduct for which the employer claims the plaintiff was fired.  Here, it is undisputed that Plaintiffs violated one or more of Defendant's written policies, policies of which they were clearly aware.  Consequently, there is no dispute that they engaged in the conduct for which the employer claims they were fired.

Alternatively, a plaintiff may establish pretext if that plaintiff can identify other employees outside of the protected class who the employer knew engaged conduct nearly identical to that for which the plaintiff was discharged, but who the employer retained.  This means of establishing pretext is also unavailing to Plaintiffs.  They cannot identify any employees outside of the relevant protect class for purpose of any of the claims in this case who the employer knew engaged in nearly identical conduct, that is conduct of a materially similar quality and quantity, but were retained when Plaintiffs were discharged.  Simply put, Plaintiffs engaged in conduct in violation of Defendant's written policies on far more occasions than any other employees identified at any of Defendant's locations.

Finally, Plaintiffs argue that the body of evidence before this court, including the evidence they offer to establish a prima facie case, establishes that Defendant's legitimate, nondiscriminatory reasons are pretextual.  The evidence before the court, taken either singly or as a whole, fails to create a triable issue as to whether Defendant's legitimate, non-discriminatory reason was a pretext for discrimination on the basis of either race or sex.

Plaintiffs point out that in April of 2004, eight of eleven employees at the Eastchase store were African-American and by June of 2004 far fewer African-American employees worked at the Eastchase store.  Plaintiffs attribute the change in large part to a conscious attempt by Defendant to change the racial makeup of the store's workforce in response to a single customer complaint it received in April of 2004.[22]  Yet they fail to provide the court meaningful information about the full factual context to allow it to make any significance of the "statistics" they proffer.  For example, without information about the racial makeup of the pool of qualified applicants from which replacement employees were hired, it is impossible to find inferences created by the change in the racial composition of the workforce.

The five African-American employees who are plaintiffs in this action were fired in late May of 2004 for violating company policies relating to employee purchases.  The undisputed evidence before this court establishes that they did in fact violate Defendant's written policies, policies of which they were aware.  Nevertheless, Plaintiffs argue that they acted in accordance with a verbal policy put in place by their Store Manager Gatewood. They even argue that Owens, the District Manager was aware of the verbal policy.  Plaintiffs fail, however, to offer admissible evidence from which a reasonable jury could find that they

---

[22]  Plaintiffs have no evidence that anyone responsible for the decisions to terminate their employment was in any way influenced by the receipt of the single customer complaint about the racial make-up of the Eastchase store.  While the temporal proximity of that message to the termination decisions might create a weak inference of some connection, there is simply nothing else to tie the events together.

did not engage in the violations of written company policy for which their employment was terminated. It is not appropriate for this court to second guess the employer's decision not to excuse such policy violations on the basis of the excuses offered by Plaintiffs. Of course, an employer may not act in a fashion that discriminates on the basis of race or sex or any other impermissible basis when making decisions regarding the excuses offered by employees for work rule violations; but there is no evidence that Defendant did so.

Next Plaintiffs argue that Defendant's reason for terminating their employment was a pretext for discrimination because Defendant did not thoroughly investigate other stores, in particular a store in Prattville formerly run by Gatewood and supervised by Owens which, according to Plaintiffs, employs mostly Caucasian employees. For its part, Defendant has established that someone from its Loss Prevention Department did briefly look into employee purchases at the Prattville location, but did not find the kind of widespread and extensive problems as existed at the Eastchase store. Indeed, the court's own review of the proffered comparators from the Prattville store makes it quite plain that the number of improper purchases at the Prattville store was far lower than those at the Eastchase store. Of course, the investigation is not the adverse employment action at issue here. The termination of Plaintiffs' employment is the adverse employment action. If the failure to investigate had been shown, through materials obtained during discovery in this case, to have been a way to protect Caucasian or male employees who had engaged in nearly identical conduct, then perhaps the failure to investigate might be relevant to the issues before this court. There is

35

no evidence the failure to investigate is relevant in this case.

Plaintiffs ignore the fact that an African-American Sales Associate at the Eastchase store who did not violate the company policies was retained when they were fired. Plaintiffs ignore the fact that a Caucasian Sales Associate at the Eastchase store who violated the same company policies was fired on the same day that they were fired. Plaintiffs ignore the fact that both African-American and Caucasian employees were brought into the Eastchase store after the termination of their employment. While this court is charged with viewing the facts in the light most favorable to Plaintiffs for purposes of its review of these motions, it is not required to ignore undisputed material facts which are relevant to the issues before it, but which do not support Plaintiffs' claims.

On the record before this court, no reasonable jury could find that the proffered reasons for the termination of Plaintiffs' employment was a pretext for discrimination on either the basis of race or sex. Accordingly, Defendant's motions for summary judgment are due to be GRANTED on all claims arising out of the termination of the employment of King, Elmore, Smith, Caldwell, and Vinson.

## VI. CONCLUSION

For the reasons stated above, the court finds that Kirkland's is entitled to summary judgment on all of Plaintiffs' remaining claims. Accordingly, it is hereby ORDERED as follows:

(1) All of Plaintiffs' retaliation claims (Count II - Retaliation) are DISMISSED.

(2) Defendant's Motion for Summary Judgment as to Plaintiff Alicia Caldwell's Claims (Doc. # 28) is GRANTED;

(3) Defendant's Motion for Summary Judgment as to Plaintiff Tammy Elmore's Claims (Doc. # 29) is GRANTED;

(4) Defendant's Motion for Summary Judgment as to Plaintiff Pamela King's Claims (Doc. # 30) is GRANTED;

(5) Defendant's Motion for Summary Judgment as to Plaintiff Charlesalyn Smith's Claims (Doc. # 31) is GRANTED;

(6) Defendant's Motion for Summary Judgment as to Plaintiff Angela Vinson's Claims (Doc. # 32) is GRANTED;

(7) The trial scheduled in this matter is CANCELLED.

This court will enter a separate final judgment taxing costs.

DONE this the 4th day of August, 2006.

_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE
